Missouri Athletic Association v. Delk Investment Corporation, Appellant.—20 S. W. (2d) 51.

Division One, September 13, 1929.

766

*Fordyce, Holliday & White* and *R. D. Fitz Gibbon* for appellant.

*Glendy B. Arnold* for respondent.

768

LINDSAY, C.—This is a suit wherein the plaintiff, Missouri Athletic Association, respondent here, sought and was granted an injunction against defendant, Delk Investment Corporation, restraining the defendant from taking steps to forfeit a lease upon certain property in the city of St. Louis. The cause was submitted upon the pleadings and an agreed statement of facts. Its determination depends entirely upon the conditions of the lease in question. The facts alleged and considered may be briefly stated, and in doing so, we follow in part the statement found in appellant's brief.

On October 15, 1914, the Boatman's Bank, by its indenture of lease, demised and let certain real estate situated in the city of St. Louis, to the Missouri Athletic Association, from said date until July 1, 1915, and for a period of ninety-nine years thereafter. Both the Boatmen's Bank and the plaintiff are and then were Missouri corporations. On October 18, 1922, the Delk Investment Corporation, also a Missouri corporation, for a consideration of $300,000, purchased all of the right, title and interest of the Boatmen's Bank in and to the said real estate, and in and to the said indenture of lease. Thereafter, the defendant Delk Investment Company notified the plaintiff that it had acquired said title and said lease, and the plaintiff attorned. During the year 1923, the plaintiff paid to defendant in rent under the lease the amount of $16,500, and the defendant for the year 1923 accounted for said rental in its return for federal income tax, and was assessed and taxed upon its net income twelve and one-half per cent under the Federal Income Tax Law of 1921, and paid a tax of twelve and one-half per cent on its net income, and paid state income taxes of one per cent on its income for the year 1923. It is agreed that after defendant purchased the land and lease from the Boatmen's Bank for $300,000, defendant set up said property on its books at that value, and as a result thereof for the year 1924 was obliged to pay and did pay to the Federal Government a capital stock tax of $300, and also that, as a result thereof, for the year 1923, defendant was obliged to pay and did pay to the State of Missouri a corporation franchise tax of $150, and further that, for the year 1924, the defendant was obliged to pay and did pay to the State of Missouri a corporation franchise tax of $150. On March 28, 1924, defendant demanded of plaintiff that plaintiff repay to defendant $2,827.50, the sum of all of said alleged taxes,

on the ground that they were due and payable to defendant, by the plaintiff, under the terms of said lease, and plaintiff refused to comply with said demand. Said sum of $2,827.50 includes $2,062.50 as being twelve and one-half per cent of $16,500, and includes $165 as one per cent of $16,500 for state income tax for the year 1923, and similarly for the year 1924. On account of such refusal, the defendant threatened that if plaintiff did not repay said taxes by June 2, 1924, it would, in accordance with the terms of the lease, take steps to declare the lease forfeited. On May 31, 1924, the plaintiff brought suit against defendant, asking for a temporary injunction, and upon a full hearing, a permanent injunction, restraining the defendant from taking steps to forfeit the lease. As a final result of the hearing a permanent injunction was awarded the plaintiff, and from that judgment defendant prosecutes this appeal. The sole matter of controversy is the effect to be given to certain provisions in the lease in question. The provisions necessary to be considered are as follows:

"The rent herein to be paid is net to the Lessor and the Lessee further covenants and agrees that it shall and will in addition to the rent to be paid by it as aforesaid, pay and discharge promptly when the same become due and payable, all taxes, rates, impositions, levies and assessments of every kind and description that may be levied or imposed or required to be paid on account of said demised premises, or any portion thereof, or the rental thereon, under either the State, City or Federal laws, or under or by any lawful authority whatsoever during the entire term of this lease, including all general and special taxes and including general taxes payable September 1, 1915, and delinquent January 1, 1916, and the proportionate part of the general taxes for the year 1914, and the sprinkling tax, and also special taxes that may be required to be paid on said property, whether for public work done or commenced during the term of this lease, including bills or judgments for benefits arising in any proceeding against the property or the owners thereof on account thereof for any public purposes whatsoever, and the Lessee upon request shall from time to time produce and exhibit to the Lessor, before the same become delinquent, receipts for all taxes, rates, impositions, levies and assessments required to be paid by the Lessee hereunder.

"It is intended hereby that all charges of whatsoever kind and nature imposed against said property or the income thereof shall be paid by the Lessee, so that the said rental of sixteen thousand five hundred dollars ($16,500) per annum shall be net to the Lessor."

The question of whether a lessee by the terms of his lease was bound to pay a part of the federal income tax of the lessor or re-

imburse the lessor for federal income tax paid by the lessor, because the rental of the leased premises entered into the taxable income of the lessor, has been before this court in two cases. [Elliott v. Winn, 305 Mo. 105, and Laclede Gas Light Co. v. St. Louis Union Trust Co., 321 Mo. 782, 12 S. W. (2d) 432.] The question was also before the St. Louis Court of Appeals in Reisenberg v. Primary Realty Co., 214 Mo. App. 43, and in that case the question of payment of the state income tax was also in issue. In each of those cases, under the terms of the covenants respectively under consideration, it was held that the lessee was not liable for the payment of any part of the income tax paid by the lessor.

In Elliott v. Winn, the covenant of the lessee was to pay all taxes and charges levied "either in the name of the lessor or the lessee against the demised premises or its improvements, or the said rents." The decision proceeded upon the basis that no tax had been levied against the rents, as such. The lessor, defendant there, had paid an income tax upon his personal net income, and a part of that net income was of rent on the premises in question—that is, the rent entered into and formed a part of the gross income, from which, allowable deductions were made, leaving the net income upon which the lessor paid the tax. But, the tax was held to be a burden laid upon the recipient of the income, whether derived from real or personal property. Under the federal law then in force, the tax was not laid upon the rents as such, but upon the net income.

In Laclede Gas Light Company v. St. Louis Union Trust Company, the terms of the covenant are set out in the opinion as being such, that the lessee should pay "all taxes, levies, charges and assessments . . . assessed, levied or imposed . . . upon the income, rents and profits arising therefrom" (the demised real estate). It was thereupon said, at page 433:

"The federal income tax is a personal tax imposed upon the net income of the individual; that is, the combined income from all sources less certain deductions and exemptions. It is not a tax levied on income at its source. Lessors' income tax does not therefore fall within the terms of the covenant; it is not a tax imposed in whole, or even in part, 'upon the income, rents and profits arising from the demised premises."

In Elliott v. Winn, it was recognized that it was within the power of the parties, if they so desired, to contract that the lessee should pay the whole, or a part, of the lessor's personal income tax upon his net income. Upon that holding, and upon the terms of this lease which defendant insists distinguishes it from the covenants considered in the cases cited, defendants rely.

Emphasis is laid upon the language used in the covenant in two respects: first, that the ''rent herein to be paid is *net* to the lessee.'' It is contended that under the provision quoted, the necessary meaning is that the rent reserved is to be free and clear of all deductions; and, by the same interpretation, free and clear of any deduction in the hands of the lessor, through requirement of payment by the lessor of any income tax on his net income, in the computation of which, the rent reserved was a part. Next, emphasis is laid upon the phrase ''on account of,'' as it appears in the provision that in addition to the rent to be paid, the lessee is to pay taxes, levies and assessments of every kind and description that may be ''levied or imposed or required to be paid *on account* of said demised premises or any portion thereof, or the rental thereon, under either state, city or federal laws.'' The argument is that by the clear meaning of the phrase ''on account of,'' the lessee is bound to pay all taxes, levies and assessments required to be paid ''by reason of,'' or because of, or, ''as a direct and proximate result of'' the demised premises or the rentals thereon. Ascertainment of the intention of the parties is the matter of chief concern. Their intention is to be gathered from a consideration of the whole instrument.

''In the construction of all instruments it is the duty of the court not to confine itself to the force of a particular expression, but to collect the intention from the whole instrument taken together. But a court is not authorized to deviate from the force of a particular expression, unless it finds in other parts of the instrument expressions which manifest that the author of the instrument could not have the intention which the literal force of a particular expression would impute to him.'' [Sachleben v. Wolff, 61 Mo. App. 1. c. 34, quoting from Vice Chancellor Leach, in Hume v. Rundell, 2 S. & S. 177.]

Words used in a written instrument are to be interpreted according to their usual and ordinary meaning. But, the parties to an instrument may define therein the words, terms or expressions used by them; and if, as so defined, they are free from ambiguity, the contract ought to be interpreted in the light of the meaning given, or, in the light of the statement of their intention, given in language free from ambiguity. [13 C. J. 532.] The parties to this lease by an express provision—the second sentence of those heretofore set forth—put their own construction upon the language used in the first sentence quoted. After setting forth in the first sentence the charges, assessments or taxes to be paid by the lessee, in addition to the rent reserved, they immediately followed that by the statement expressly setting forth their intention in what had gone before. They did this by saying:

"It is intended hereby that all charges of whatever kind and nature imposed *against said property or the income thereof* shall be paid by the Lessee, so that the said rental of Sixteen Thousand Five Hundred Dollars, ($16,500) per annum shall be net to the lessor." They thereby gave their own definition of what they meant by the use of the word "net," in connection with the subject at hand. By the provision just quoted they stated in clear terms that a rental of $16,500 clear of all charges *"imposed against said property or the income thereof,"* was the "net" rental required to be paid. Thereby, they not only gave their own definition of what was meant by "net" rental, but the language they used was a qualification of the meaning of the words "on account of," used in the preceding sentence. In construing the first sentence which we quoted and have under consideration, and all of the provisions, the closing part of the first sentence cannot be ignored in the endeavor to ascertain the intention of the parties. The closing provision of the first sentence is, "the lessee upon request shall from time to time produce and exhibit to the lessor, *before the same become delinquent,* receipts for all taxes, rents, impositions, levies and assessments required to be paid by the lessee hereunder." Thereby, the lessee agreed to produce the receipts for all taxes, levies and assessments required to be paid by him under the lease, before the same became delinquent. But this requirement clearly could have no reference to income taxes assessed against the net income of the lessor. The covenant as we construe it has reference to taxes assessed against the property or the rental thereof. There is no sort of theory under which it could have been intended that the lessee should pay, and produce a receipt for the income of the lessor, before that tax became delinquent, when it is considered that the lessor's income tax depended upon ascertainment of lessor's entire income from which, were to be taken all allowable deductions peculiar to the lessor. All the provisions considered together enforce upon us the conclusion that this lease does not require that the lessee shall pay any part of the income taxes to the state and federal governments assessed against the lessor upon the lessor's net income.

Counsel for appellant have cited a number of cases from other jurisdictions which they urge are upon covenants like the one here under consideration, and which show that it was the intention of the parties in this case that the lessee should bear the burden of the income tax. Of the cases cited, a considerable number were under review in Reisenberg v. Primary Realty Co., supra; North Pennsylvania Railroad Co. v. Philadelphia & Reading Railroad Co., 249 Pa. 326; Suter v. Jordan Marsh Co., 225 Mass. 34; Kimball v. Cotting, 229 Mass. 541; Philadelphia City Passenger Ry. Co. v.

Philadelphia Rapid Transit Co., 263 Pa. 561; Philadelphia G. & N. Railroad Co. v. Philadelphia & R. Ry. Co., 265 Pa. 325. These cases and some others are discussed in the opinion in the Reisenberg case. In the Reisenberg case at page 51, it was pointed out that the decision in Suter v. Jordan Marsh Co. was to be considered in the light of the federal income tax as it stood at the time. It is the same distinction which was referred to by GRAVES, J., in Elliott v. Winn. We have given consideration to other cases—income tax cases—cited by counsel, among them, Republic Building Co. v. Gaertner, 256 S. W. (Ky.) 1111. That case, with many others, is cited in the extensive annotations upon the question at issue under the respective covenants contained in leases, in 9 A. L. R. 1566, 30 A. L. R. 991, 45 A. L. R. 756. In respect to income taxes the lease here in question is not distinguishable from the provisions of the lease in Laclede Gas Light Co. v. St. Louis Union Trust Co., supra, and the ruling there made, following Elliott v. Winn, is controlling here. The income tax imposed upon the lessor is not a tax upon the income of the lessor from this property, as such, that is, it is not a tax levied upon that income at its source, but as was held in the Laclede Gas Light case is a tax upon the net income of the lessor, a personal tax against the lessor.

There is also to be considered the franchise tax levied by the State under the provisions of Section 9836, Revised Statutes 1919. In State v. Pierce Petroleum Corporation (in Banc), 318 Mo. l. c. 1027, this court, speaking of the nature of this franchise tax, said: ''The tax is not a property tax, but an excise levied upon the privilege of transacting business in this State *as a corporation.* [State v. Tax Commission, 283 Mo. 213.]''

This statement of the nature of a franchise tax is in accordance with the authorities generally. In 37 Cyc. 817, it is said:

''Properly speaking, a franchise tax is one imposed only on these rights or privileges, and either consisting of a more or less arbitrary sum or measured, without appraisment, by the amount of nominal capital stock; and a tax of this character is not to be regarded as a property tax. . . . And, it is generally held that such a tax is one on the franchise and not on the property of the corporation, although it has been held that a so-called franchise tax which is in fact a tax upon all intangible property in the corporation, including its capital, is really a property tax.''

In the city of Chicago v. Chicago City Railway Co., 245 Ill. App. 473, the court said:

''A franchise tax is not a tax on the property of the corporation but, properly speaking, is imposed on the corpration for the privilege of carrying on its business and exercising the corporate franchise

granted by the State" (citing many authorities, including 37 Cyc. 817; State ex rel. Marquette Hotel Investment Co. v. Tax Commission, 282 Mo. 213) "and Federal excise taxes are analogous to and often referred to as of the same nature and character as the State corporation franchise tax. [American Can Co. v. Emmerson, 288 Ill. 289.]"

In the case quoted from reference was also made to Flint v. Stone Tracy Co., 220 U. S. 108, and to utterances of the Supreme Court of the United States concerning the Corporation Tax Law of 1909, designated as a special excise tax, of which the Supreme Court said:

"It is a tax upon the doing of business with the advantages which inhere in the peculiarities of corporate or joint stock organizations."

And, the court further said:

"The tax is laid upon the privileges which exist in the conducting of a business with the advantages which inhere in the corporate capacity of those taxed. . . . It is this distinctive privilege which is the subject of taxation."

The capital-stock tax paid by the lessor and in question here, was one required by the Federal Act of 1921:

"Every domestic corporation shall pay annually a special excise tax with respect to carrying on or doing business, equivalent to $1 for each $1,000 of so much of the fair average value of its capital stock for the preceding year ending June 30, and is in excess of $5,000." [42 U. S. Statutes at Large, p. 294.]

Among the cases cited by the appellant in support of the claim that the lessee herein is bound to pay the capital stock tax and the franchise tax, is Thomas v. Cincinnati N. O. & T. P. Ry. Co., 93 Fed. (C. C. A.) 587. The issue there was whether a franchise tax levied by the State of Kentucky, was to be paid by the lessee under the terms of the lease. The covenant there under consideration was clause 3 of the lease, set out in the statement, as follows:

"And the said party of the second part further covenants and agrees to pay and discharge, as often as they shall become due, any and all taxes, assessments, duties, imposts, and charges whatsoever which may be levied, assessed, or imposed during the term hereby granted, by any government or lawful authority whatsoever, upon the premises hereby leased, or any part thereof, or upon any business or earnings or income of the same, or by reason of the ownership thereof; it being the true intent and meaning hereof that all governmental charges upon the aforesaid property or income therefrom, which may be imposed by any governmental authority capable of enforcing such charges, through, upon or against said property, or the corporation owning or the party leasing the same, shall be assumed

and satisfied by the party of the second part hereto, however the forms thereof may change during the term hereby granted."

The court said, l. c. 591: "It was evidently the purpose to secure to the city of Cincinnati a net rent, without any deduction for taxation arising from its ownership of the Cincinnati Southern Railway."

The court then referred to the first part of clause 3, whereby it was said:

"The lessee agrees to pay all taxes, assessments, duties, imposts, and charges whatsoever which may be imposed during the term, by any governmental or lawful authority, upon the premises leased, on any part thereof, or upon any business or earnings or income of the same, or by reason of the ownership thereof."

The court referred to the recital contained in clause 3, as to the true intent of that clause. It was said that "the latter part—the interpreting part thereof—gives plausibility to the contention that it limits the meaning of the clause to charges upon the property or income therefrom." Under the language of that clause the court held that the interpreting words were added, not to cut down, but to enlarge what had gone before. The court said, l. c. 592:

"Reading the whole clause together, however, I am convinced that the interpreting words were added for the purpose, not of cutting down what had gone before, but for the purpose of enlargement, by a specification that the obligation to pay should exist whether the tax was imposed on the property, or against the corporation owning it, or against the party leasing it; and that the words, 'charges upon the aforesaid property or income therefrom,' were not intended to limit the meaning, or diminish the scope, of the words, 'or upon any business earnings or income of the same or by reason of the ownership thereof.' For these reasons, I think the lessee is bound to pay the franchise tax levied against the trustees, if that tax is a valid tax."

As heretofore indicated, having regard to the whole of the clause in the lease in question in the case at bar, we have reached the conclusion that here, the interpreting part of the clause does the opposite from that done in the case just referred to, and instead of enlarging the provision preceding it, clearly, and unmistakably confines and limits those provisions. It limits them to charges imposed against said property or the income thereof, and makes those charges the test of what shall be "net" to the lessor.

In view of the conclusions stated, it is considered that the judgment herein must be affirmed. *Seddon* and *Ellison, CC.*, concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the Court. All of the judges concur.