[Civ. No. 12015. First Dist., Div. One. July 23, 1942.]

EDWARD BROWN & SONS (a Corporation), Appellant, v. CHARLES J. McCOLGAN, as Franchise Tax Commissioner, etc., Respondent.

Long & Levit for Appellant.

Earl Warren, Attorney General, H. H. Linney, Assistant Attorney General, and James E. Sabine, Deputy Attorney General, for Respondent.

WARD, J.—This is an action to recover taxes paid by plaintiff in 1935 under the California Bank and Corporation Franchise Tax Act (California Const., art. XIII, § 14, as amended in 1933) after claim for refund therefor was denied by the Franchise Tax Commissioner.

Plaintiff and defendant entered into a written stipulation that certain of the material allegations of the complaint, among which were the following, were true: ". . . plaintiff was and now is an insurance agent doing business in California and representing insurance companies as their agent; that during the said calendar years 1934 and 1935 the insurance companies represented by plaintiff as agent were: [the names of eighteen insurance companies are set forth] ; . . . that each of said insurance companies was at all times herein mentioned authorized to transact an insurance business in and by the State of California; that plaintiff's entire income during the said period was derived from its said insurance agency business, and plaintiff engaged in no other business activity during said period. That plaintiff is informed and believes and therefore alleges that at all times herein mentioned each of said above-mentioned insurance companies paid to the State of California the full amount of the gross premium tax required of each of them under and by virtue of the provisions of section 14, Article XIII of the California Constitution"; that a franchise tax return was filed for the year 1935, and the tax indicated thereon paid, following which a claim for refund of the entire amount was filed, based upon the contention that under the provisions of said section 14 of article XIII of the Constitution, the corporation, engaged in business as an insurance agent for the designated eighteen companies doing business in the State of California, was not subject to the tax; that the claim for refund was denied and that plaintiff has not appealed to the State Board of Equalization from the action of the Franchise Tax Commissioner in denying the refund. The findings follow the stipulation. After the entry of a judgment for defendant, a new trial was granted and the matter resubmitted upon the same stipulated facts and reargued. Again judgment was entered for defendant, from which plaintiff corporation appeals.

· Subdivision 3 of section 4 of the Bank and Corporation

Franchise Tax Act (Stats. 1935, ch. 353, p. 1246; Deering's Gen. Laws, 1935 Supp., Act 8488) provides: "with the exception of financial corporations, every corporation doing business within the limits of this State and not expressly exempted from taxation by the provisions of the Constitution of this State or by this act, shall annually pay to the State, for the privilege of exercising its corporate franchises within this State, a tax according to or measured by its net income, to be computed, in the manner hereinafter provided. . . ." Political Code section 3664b provides that every insurance company doing business in this state shall pay a designated percentage upon the amount of gross premiums received upon business done in this state and further provides: "This tax shall be in lieu of all other taxes and licenses, State, county and municipal, upon such companies or their property, except taxes upon their real estate." (Art. XIII, § 14 of the California Const.)

■ Appellant contends that a tax on an insurance agent for the privilege of doing business is a direct tax on the insurance companies it represents and hence is forbidden by the "in lieu" provision above referred to requiring every insurance company to pay a percentage of its gross premiums as an annual tax. In support of such contention it relies principally on *Hughes* v. *City of Los Angeles,* 168 Cal. 764 [145 Pac. 94]. In that case a revenue ordinance in the nature of an occupational tax providing for the payment of a designated license fee "whether the insurer be a corporation, mutual company, or individual," was declared to be in violation of article XIII, § 14 of the Constitution of this state. The court there said: "Under the authority of *Los Angeles Trust Co.* v. *City of Los Angeles* (L. A. No. 3271), *ante,* [168 Cal.] p. 762 [145 Pac. 94], this day decided, no doubt can be entertained but that if this privilege tax were imposed upon the insurance companies themselves it would be invalid. The distinction sought to be drawn in this case is that this particular license fee is not imposed upon the companies but upon the agents of the companies. This is true, but upon the other hand it is equally true that every insurance corporation must act through agents and can act only through agents, and that, therefore, in a direct and immediate sense a tax upon such agents for the right to do business is a tax upon the corporation's right to do business."

Certain tax statutes have been held to tax the mere privilege of being a corporation; that is, the enjoyment of the

right to do business (Stats. 1929, ch. 13, § 5, p. 20) ; or, as later declared, the right of exercising a corporate franchise in this state. (Stats. 1931, ch. 1066, § 5, p. 2225; Deering's Gen. Laws, 1937, Act 8488; *Oliver Cont. Filter Co.* v. *McColgan,* 48 Cal. App. (2d) 800, 805 [120 P. (2d) 682].)

■ The character of a tax "must be ascertained by its incidents, and from the natural and legal effect of the language employed in the statute." (*Ingels* v. *Riley,* 5 Cal. (2d) 154, 159 [53 P. (2d) 939, 103 A. L. R. 1].) A privilege tax is not a property tax within the meaning of the constitutional provisions. (*Brunton* v. *Superior Court,* 20 Cal. (2d) 202 [124 P. (2d) 831].) ■ The tax in question "does not become a property tax simply because it is proportioned in amount to the value of the property used in connection with the privilege which is taxed." (*Ingels* v. *Riley, supra,* p. 160; *Carpenter* v. *Peoples Mut. Life Ins. Co.,* 10 Cal. (2d) 299 [74 P. (2d) 508] ; *Camden Fire Ins. Assn.* v. *Johnson,* 42 Cal. App. (2d) 528 [109 P. (2d) 447].) In *Consolidated Title Securities Co.* v. *Hopkins,* 1 Cal. (2d) 414, 419 [35 P. (2d) 320], the court said: "The gross premium tax required to be paid by insurance companies, although in lieu of certain taxes *upon* property, is not, like the public utilities gross receipts tax, by the terms of the constitutional provision itself a tax *upon* property. Rather, it is a franchise tax exacted for the privilege of doing business in this state. . . ."

■ The Hughes case is not controlling herein. It held that an occupation tax on the insurance agent because he was an agent of an insurance company was invalid. But this tax (franchise tax) is on all corporations doing business in this state "on the privilege of doing business as a corporation." The Hughes case decided that an occupation tax aimed at insurance agents hit insurance companies directly. This holding was necessary because the "in lieu" provision applies to direct taxes on insurance companies, and does not apply to indirect taxes imposed on other persons or corporations and passed on to the insurance company. The privilege of exemption from liability for other taxes is predicated on the theory that a gross premiums tax has been paid. Appellant, of course, pays no gross premiums tax. It follows that unless the franchise tax on Edward Brown & Sons is a direct tax on the insurance companies it represents, appellant must pay the franchise tax.

It is apparent that any effect that the payment of a fran-

chise tax by Edward Brown & Sons may have on the insurance companies it represents is at most indirect. So far as the payment of the tax by appellant is concerned, it has no more effect on the insurance companies than the payment by appellant of automobile or personal property taxes.

The franchise tax act does not single out the business of insurance agents and levy a tax on that business. It does not tax such business at all. It is not an occupational tax such as was involved in the Hughes case. While the tax is imposed only on companies doing business in California, the phrase "doing business" merely describes the group intended to be taxed—the tax is not imposed on the *doing* of business. If it were, it would be an occupational tax and including only corporations and excluding partnerships and individuals doing business might well render the tax invalid. The tax by express language is imposed on the privilege of doing business as a corporation. It is imposed on the privilege of using the corporate mechanism, with its consequent advantages over other forms of doing business in this state.

In *Anglo-Chilean etc. Corp.* v. *Alabama*, 288 U. S. 218, 228 [53 S. Ct. 373, 77 L. Ed. 710], strongly relied upon by appellant, it was held "that the power of the State to withhold from a foreign corporation permission to exercise its franchise to do business therein does not enable it, when granting the privilege, to burden by taxation interstate commerce carried on by such corporation within the State." The court there was dealing with an interference with interstate commerce. The facts of the present case are essentially different. Appellant is a California corporation entitled to the privilege and actually doing business within the state without the payment of tax measured by its net income.

The trial judge, the Hon. C. J. Goodell, rendered a written opinion in which he reviews certain cases bearing upon this question. We are in accord with his understanding and interpretation of those cases as set forth in the following excerpt from that opinion (emphasis being as therein employed unless otherwise indicated):

"In *The Pacific Co., Ltd.* v. *Johnson*, 212 Cal. 148 [298 Pac. 489] at 154 (affirmed in 285 U. S. 480 [52 S. Ct. 424, 76 L. Ed. 893]), the court says: 'A franchise tax is a tax imposed upon a corporation *for the right or privilege of being a corporation or of doing business in a corporate capacity. . . .*' (. . . and note the similarity of this language to that cited from the Constitution, art. XIII, § 16, subd. 2a.)

"In *Memphis Dock & Fwd. Co.* v. *Fort* (Supreme Court of Tennessee, 1936), [170 Tenn. 109] 92 S. W. (2d) 408, 409, the court enlarges somewhat upon our own Supreme Court's statement just quoted, when it says: 'The (excise) tax is not laid upon a particular corporate business or upon a particular transaction; it is upon the privilege of doing business as a corporation and exercising the corporate powers for the purpose of producing a profit. *The source of the profit and the character of business carried on in the corporate name is immaterial.* The tax is measured by net earnings that result from whatever business may be done by the corporation in the exercise of powers conferred by the charter. . . . (Citing cases.)'

"In *Missouri Athletic Assn.* v. *Delk Inv. Corporation* (Supreme Court of Missouri, 1929), [323 Mo. 765] 20 S. W. (2d) 51, 55, the court quotes from an earlier decision of their own (318 Mo. [1020] 1027, 2 S. W. (2d) 790, 794), as follows: 'The tax is not a property tax, but an excise levied upon the privilege of transacting business in this state *as a corporation.*' (Citing 282 Mo. 213, 221 S. W. 721; emphasis the court's.)

"The Missouri Court then cites 37 Cyc. 817 and *City of Chicago* v. *Chicago City Railway Co.*, 245 Ill. App. 473, which case, in turn, refers to *Flint* v. *Stone Tracy Co.*, 220 U. S. [107] 108 [31 S. Ct. 342, 55 L. Ed. 389], quoting: 'it is a tax upon the doing of business with the advantages which inhere in the peculiarities of corporate or joint stock organizations' and further quoting: 'The tax is laid upon the privileges which exist in the conducting of a business with the advantages which inhere in the corporate capacity of those taxed. . . . *It is this distinctive privilege which is the subject of taxation.* . . .'

"In *Diamond Match Co.* v. *State Tax Commission* (Court of Appeals, Maryland, 1938), [175 Md. 234] 200 Atl. 365, 369, appears the following: 'Again, the franchise tax imposed conferred on the corporation no more than the privilege of *juristic personality* and limited corporate liability. . . .'

"In *State* v. *Clement Nat. Bank* (Supreme Court of Vermont, 1911), [84 Vt. 167] 78 Atl. 944 at 949 [Ann. Cas. 1912 D, 22] it is said: 'A "franchise tax" is a tax upon the privilege of doing business *under corporate organization.* . . .'

"See also *In re Stevens* (1905), [46 Misc. 623] 95 N. Y. Supp. 297 at 313.

"Many other authorities could be cited to the same general effect. . . .

"*Carpenter* v. *Peoples Mutual Life Ins. Co.*, 10 Cal. (2d) 299 [74 P. (2d) 508], is cited by the plaintiff to the point that 'This tax is a franchise tax exacted for the privilege of conducting an insurance business in the state.' . . . That is true in the case of an insurance company itself because it comes under these very provisions of the Constitution. Corporations other than insurance companies come under the other provisions and as to them all that can be said is that they are taxed for the privilege of doing business, not as an insurance corporation, but simply as a corporation.

"*Hartford Fire Ins. Co.* v. *Jordan*, 168 Cal. 270 [142 Pac. 839], held that the gross premium tax on insurance companies was in lieu of all taxes including a corporation franchise tax. It does not hold that an incorporated insurance agent has the same immunity.

"*City Investments, Ltd.* v. *Johnson*, 6 Cal. (2d) 150 [56 P. (2d) 939], and *Fore River Shipbuilding Corp.* v. *Commonwealth*, 248 Mass. 137 [142 N. E. 812] (cited by McLaren and Butler in 'California Tax Laws of 1929') hold that a corporate franchise tax is a tax on the right of a corporation to do business in this state. Nothing herein is inconsistent with those cases. . . .

"In *Commissioner of Corporations and Taxation* v. *Bristol County Kennel Club, Inc.*, [301 Mass. 27] 16 N. E. (2d) 43 (Supreme Judicial Court of Mass., 1938), it was held that a statute requiring a license fee of a person or corporation to conduct meetings for the racing of horses or dogs and requiring that no other license fee or excise shall be assessed or collected from the licensee by the state or any political subdivision thereof does not exempt a domestic business corporation licensed to conduct dog races from the payment of an excise tax imposed on domestic business corporations.

"At first blush the Massachusetts case might seem to be distinguishable in that the court strictly construed the exemption provision against the taxpayer, whereas our courts have held that the rule of strict construction does not apply to the 'in lieu' provision in question. (*San Francisco* v. *Pacific Tel. & Tel. Co.*, 166 Cal. 244, 248 [135 Pac. 971].)

"However, the rule of liberal construction spoken of in the case last cited only applies 'in favor of the person required to pay taxes in the substituted license form.' Thus it would seem to apply only in favor of the insurance com-

panies who pay the gross premium tax, and not in favor of their agents. If the tax were imposed 'in a direct and immediate sense' (Hughes case) upon the insurance companies, then the tax would be invalid by virtue of the liberal construction given to the 'in lieu' provision. But since the tax in question is not an occupation tax, nor imposed as a condition to entering or remaining in, the insurance business, it is not 'in a direct and immediate sense' upon the insurance companies themselves. As stated by the Massachusetts court (*supra*), 'but that it was meant to exempt a licensee as well from an excise that has no relation to acts done as a licensee, but arises from doing business as a corporation, we cannot believe.'

"The Massachusetts case, *supra*, holds that the in lieu provision or exemption 'has no certain or plainly intended application to a corporation excise tax, for an individual as well as a corporation may be granted a dog racing license.' Paraphrasing that, it is clear that plaintiffs may, if they choose, carry on the business of insurance agents individually or as a copartnership foregoing the advantages derived from incorporation and thereby legally escape the payment of the tax in question. In other words, the reasons given in the Massachusetts decision seem to answer the plaintiff's contention herein. There it is said that if a licensee by reason of the exemption provision does not have to pay a corporation tax, 'It would be as reasonable to hold that a . . . licensee . . . is freed from liability to pay a legacy tax . . . a stock transfer tax . . . a motor vehicle excise tax . . .' etc."

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 21, 1942. Shenk, J., and Edmonds, J., voted for a hearing.