## AMBROSE E. ELLIOTT et al. Appellants, v. GEORGE H. WINN.

In Banc, July 31, 1924.

1. **WRITTEN LEASE**: Interpretation: Oral Evidence. If the clause of a written instrument, when taken by itself, or when taken and considered in connection with all other parts thereof, is not ambiguous, oral evidence is not an aid to the interpretation of the clause, and is not competent. Where the sole question for adjudication is whether the ninety-nine-year written lease obligated the lessor or lessee to pay the income taxes chargeable upon the annual rental and assessed against the lessor, and the clause of the lease relating to the payment of the taxes is not ambiguous, oral testimony of conversations between the parties while the lease was in the course of preparation is not competent. Oral agreements prior to the written contract are presumed to have been merged in the written contract, and are not allowed to vary its unambiguous terms, but those terms become final, irrespective of previous oral conversations or understandings.

2. ————: For Ninety-Nine Years: Interpretation: Income Taxes. Certain lots were leased for ninety-nine years for an annual rental of fifteen thousand dollars, and the rent having been paid the lessor included it, as a part of his income for the year, in his income-tax report to the Federal Government, paid the income taxes charged to him, and in his pleading claims that, under the terms of the lease, the lessee was obligated to pay so much of the income tax as was chargeable against his rental income, and therefore he is entitled to be re-imbursed by the lessee in the amount of the income tax chargeable against the rents so paid by him. The lease recited: "The lessor covenants that he will pay all taxes, general and special, and assessments, if any, against the property and its improvements, which shall be due and payable when the demised property shall be delivered to the lessee under this lease, and the

lessee agrees to pay all taxes, general and special, and assessments due and payable upon the execution and delivery of this lease, and all of the taxes thereof, general and special, including all income or government taxes, and all of the assessments and charges which shall be assessed, either in the name of the lessor or the lessee, against the demised premises or its improvements, or the said rents during the term of this lease, or which shall become due and payable during said term, as soon as same shall become due and payable." *Held*, that the agreement was that the lessee would pay all "income taxes . . . assessed . . . against . . . the said rents," and as the income tax was not assessed against the rents, but against the lessor's net income, the lessee did not agree to pay the income taxes so paid by the lessor.

3. ———: ———: ———: ———: **Assessment.** Where the lessee agreed to pay the income taxes "assessed against the said rents," and the Government has made no assessment against the rents, but all it has done is to make an income tax assessment against the personal net income of the lessor, the lessee did not agree to pay the lessor's income taxes or any part of them, although a part of his income is the rentals paid by the lessee.

4. ———: ———: ———: ———: ———: **Act of 1913.** Words in the written lease, made in April, 1916, to become effective in May, 1918, obligating the lessee to pay Government income taxes "assessed against the said rents" are probably accounted for by the provisions of the Federal Income Act of 1913, which impounded in the hands of the person paying the rents the income tax thereon, and required the lessee to make a return of the rent for taxation, and to withhold from such rent the income tax—which was a direct action in assessing the tax against the rent. But in September, 1916, after the actual making of the lease but before it became effective, a new income tax law was enacted, from which the words "lessees or mortgagors" were omitted, and thereafter lessees were not required to make returns of rents paid or to withhold or deduct the income tax, and the Government's direct action against rents, as sources of income, ceased. But whether the Act of 1913 influenced the wording of the lease drawn in 1916 is immaterial, since its language is not ambiguous, and it did not require the lessee to pay the income taxes unless they were "assessed against the said rents," and there was no assessment against the rents for 1918, and neither the rents for that year or any part of them, nor the income taxes of the lessor for that year paid by him in 1919, were impounded in the hands of the lessee.

---

Headnote 1: Evidence, 22 C. J. pars. 1459, 1570; Landlord and Tenant, 35 C. J. par. 480; Headnotes 2 to 4: Landlord and Tenant, 36 C. J. par. 758.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

REVERSED AND REMANDED (*with directions*).

*A. N. Gossett, Gossett, Ellis, Dietrich & Tyler, I. J. Ringolsky, M. L. Friedman, Ringolsky & Friedman* and *Wm. G. Boatright* for appellants.

(1)  The word "or," as used in the phrase "income or government taxes" is a disjunctive conjunction, which marks an alternative, and the phrase does not mean lessor's personal Federal income tax. 29 Cyc. 1503, "Or." (2)  The phrase "assessments and charges" does not mean lessor's personal Federal income tax. 37 Cyc. 711-712, "Taxation;" 5 C. J. 819, "Assessment;" Des Moines Union Ry. v. Chicago Great Western Ry. Co., 177 N. W. 90.  (3)  The lease being drafted by respondent and the tax covenant thereof being ambiguous, it must be construed most strongly against lessor. 13 C. J. 545, "Contracts;"  McManus v. Gregory, 16 Mo. App. 375, 94 Mo. 370; Belch v. Schott, 171 Mo. App. 357.  (4) It is a recognized rule of construction that, where more than one construction is permissible, that most favorable to the lessee must prevail. 24 Cyc. 915, "Landlord and Tenant;" Linville v. Greer, 165 Mo. 380; Wright v. Takito, 210 Ill. App. 58; Peirce v. N. Y. Do.: Co., 265 Fed. 148; Niles Land Co. v. Iron Co., 234 Fed. 294; Getty v. Cornell Co., 177 N. Y. Supp. 691.  (5)  If the tax covenant is unambiguous, the duty of the court is to ascertain not what the parties may have secretly intended as contradistinguished from what the words express, but what is the meaning of the words they have used. Missouri Edison Electric Co. v. Bry, 88 Mo. App. 135; Burress v. Blair, 61 Mo. 133; Koehring v. Mueminghoff, 61 Mo. 403.  (6)  The Federal income tax is levied against the recipient of a net income, or against the net income as such and is not a tax levied against any separate item of profit constituting the aggregate net in-

come, and is not levied against the demised premises or the rents. War Revenue Act of 1918 (Part 2), 40 U. S. Statutes at Large, Part. 1, p. 1062; Holmes on Federal Income & Profit Taxes (1919 Ed.) p. 656; Wire Co. v. Wollbrinck, 275 Mo. 339; Dennehy v. Barnheisel, 218 Ill. App. 91; State ex rel. Manitowac Gas Co. v. Wisconsin Tax Commission, 161 Wis. 111; State ex rel. Moon Co. v. Wisconsin Tax Commission, 166 Wis. 287; In Re Hazard's Estate, 228 N. Y. 26; Urquart v. Marion Hotel Co., 128 Ark. 283; Brady v. Anderson, 249 Fed. 665; Black on Income Tax (3 Ed.) pp. 1, 2; 16th Amendment of Federal Constitution; Shaffer v. Howard, 250 Fed. 873; Pennsylvania Cement Co. v. Bradley Contracting Co., 274 Fed. 1003; United States v. Philadelphia Railroad Co., 262 Fed. 188; Brushaber v. Union Pacific Ry. Co., 240 U. S. 1; Stanton v. Baltic Mining Co., 240 U. S. 103; U. S. Glue Co. v. Town of Oak Creek, 247 U. S. 321; Brewster v. Walsh, 268 Fed. 207; State ex rel. McClintock v. Guinotte, 275 Mo. 298; Northern Trust Co. v. Buck & Raynes, 263 Ill. 222.

*Watson, Gage & Ess* for respondent.

(1) The language of the lease clearly obligates the appellant to pay the income tax when such covenant is construed with reference to the common, ordinary and usual meaning of the words therein employed. Northern Philadelphia Railroad Co. v. Philadelphia Railroad Co., 249 Penn. 326; Van Beil v. Brogan, 656 Sup. Ct. Rep. 384; 2 Underhill on Landlord & Tenant, p. 601; Missouri Edison Co. v. Bry, 88 Mo. App. 135; Roy v. Boteler, 40 Mo. App. 213; Johnson v. Dalrymple, 140 Mo. App. 232; Maginn v. Lancaster, 100 Mo. App. 130; Campbell v. Cotting, 229 Mass. 541; Erlick v. Brogan, 262 Pa. 362. (2) The question to be determined does not rest upon any theoretical distinction as to the nature of the income tax, nor upon the legal theory under which said taxes are imposed, but depends upon the agreement of the parties

made with reference to the payment of this tax.    (3) There is no admission that the covenant to pay "all income and government tax" contained in the lease, had been broken by appellant through mistake, ignorance, negligence or inadvertence, or any plea for equitable relief therefrom.    Hence, there is no issue raised under the pleadings for an equitable relief from forfeiture.    Metropolitan Land Co. v. Manning, 98 Mo. App. 264; Koehler v. Rowland, 275 Mo. 573.

GRAVES, C. J.—This case was certified to us by the Kansas City Court of Appeals, such court having concluded that it was without jurisdiction.    In that we think the court was right.    Before reaching the conclusion that it was without jurisdiction, that court had prepared and handed down an opinion in the case.    The learned presiding judge of that court in that opinion, thus outlies the pleadings and judgment *nisi*:

"The controversy herein is over the meaning and effect of a certain covenant in a lease with reference to the payment by lessee of income taxes arising by reason of the lessor's receipt of rent under said lease.

"On April 26, 1916, George H. Winn, owner of the premises known as 105-107 East 12th Street, Kansas City, Missouri, leased the same to Ambrose E. Elliott for a term of ninety-nine years, beginning on the 5th of May, 1918, the lessee agreeing to pay a rental of $15,000 per year in monthly installments of $1250 payable in advance. The lessee agreed to remodel the building on the premises, at a cost of not less than $6000, within one year from May 5, 1918, and to erect, within five years from said date, a new building to cost not less than $50,000, he giving to lessor an indemnity bond of $20,000 conditioned that the new building would be free of liens.    Lessee remodeled the building within the year, expending thereon the sum of $30,000 instead of $6000, and, in view of this fact, the lessee was given ten, in place of five, years from the date of the lease in which to erect the $50,000 building.

"The lease provided that lessee should not assign said lease or sell his interest in the demised premises or building except as therein provided, and if lessee made an assignment or sale otherwise, it should be void; and it was also provided that lessee could not assign without the written consent of lessor.

"A further clause provided that if default was made in any of the covenants of the lease and such default should continue thirty days after notice in writing to the lessee, it would be lawful for the lessor, his heirs or assigns, at his or their election, to declare a forfeiture of the lease and re-enter and take possession of said premises.

"There were a number of other covenants in the lease, none of which need be mentioned here, except the one over which the controversy herein arises, said covenant being, as stated, in relation to the payment of taxes and reads as follows:

" 'The lessor covenants that he will pay all taxes, general and special, and assessments, if any, against the property and its improvements, which shall be due and payable when the demised property shall be delivered to the lessee under this lease, and the lessee agrees to promptly pay all taxes, general and special, and assessments due and payable upon the execution and delivery of this lease, and all of the taxes thereof, general and special, including all income or government taxes, and all of the assessments and charges which shall be assessed, either in the name of the lessor or the lessee against the demised premises or its improvements, or the said rents during the term of this lease, or which shall become due and payable during said term, as soon as same shall become due and payable, except, however, that the lessee shall not at any time during the term of this lease, be required to pay any inheritance tax, which may be levied upon the property aforesaid, or the improvements thereon, or appertaining to the interest of the lessor herein, but shall pay any inheritance tax which may be levied

upon the property aforesaid, or upon the improvements thereon appertaining to the interests of the lessee herein.'

"On October 29, 1918, the lessee, Elliott, in the manner provided in the lease for the sale or assignment thereof but without lessor's written consent, sub-leased the premises to the Josephson Amusement Company for a term of seventy-five years beginning November 5, 1918. The terms of this sub-lease, with regard to the rental to be paid, the tax covenant, and all obligations to be performed by the sub-lessee with reference to the property, are the same as those to be performed by lessee, Elliott, in the dominant lease. While Winn knew of this sub-leasing he did not consent to same or accept the Joesphson Amusement Company as his tenant, but consistently looked to and dealt with Elliott as his lessee and retained all his rights as lessor against him.

"Elliott having gone into possession of the premises in May, 1918, the rent paid for the remainder of that year amounted to $10,000; and Winn had to include this sum, as a part of his income for that year, in his income-tax return to the Federal Government. On March 14, 1919, Winn wrote Elliott a letter telling him that under the above-quoted covenant in the lease he must pay the income tax thereon. No heed was paid to this letter, so on June 23, 1919, Winn wrote Elliott another letter telling him, he, Winn, had paid the said income tax and demanded re-payment of same to him under the above-quoted covenant. Receiving no reply to this, Winn, on July 2, 1919, notified Elliott in writing that unless the amount of said income tax was paid on or before July 29, 1919, he would declare the lease forfeited as provided for therein.

"Thereupon, plaintiffs, on July 11, 1919, brought this suit in equity to enjoin Winn from declaring a forfeiture of the ninety-nine-year lease, alleging the foregoing facts, and also alleged that defendant Winn, by refusing to recognize the validity and legality of the sub-lease, was casting a cloud on the title; that all of the

covenants of the lease had been performed, except that plaintiffs refused to pay the income tax because there was no provision in said lease obligating Elliott to pay Winn's income tax or any part of same; that defendant 'through mistaken ignorance of facts and of the meaning of the terms of said lease,' and a desire to possess himself of the valuable lease, property and rights of plaintiffs, wrongfully threatens to forfeit the same; that the provision in the lease is ambiguous and does not obligate Elliott to pay defendant's income tax or any part of same; that the threats and determination of defendant to declare a forfeiture will cast a cloud on plaintiffs' title to the lease and to the valuable building erected thereon and the business conducted in same, the lease and premises being alleged elsewhere in the petition to be worth over $100,000; that at no time was it the intention of defendant and lessee that the latter should pay the income tax or any part of same exacted by the United States Government on the income of defendant even though part or all of defendant's income be derived from rents paid as per the terms of the lease mentioned; that defendant's claim is unjust and excessive and plaintiffs have no adequate remedy at law; and if defendant is permitted to declare a forfeiture they will suffer irreparable damage; that they tender a bond for the payment of said claim should it be determined that Elliott is by the terms of the lease obligated to pay the income tax as claimed; wherefore, it was prayed that defendant be restrained from declaring a forfeiture and from claiming rights granted under a forfeiture; that a decree be rendered finding that Elliott is not under any obligation to pay the income tax demanded; that the sub-lease made by Elliott to his co-plaintiff be found a valid, legal and binding lease on the part of Elliott and defendant, and for all other relief.

"A temporary restraining order was issued, to take effect upon plaintiffs' giving the bond referred to, which was done.

"Thereafter, on December 4, 1919, defendant answered, admitting the lease and setting up the rights hereinabove mentioned as claimed by him, averring the payment of the Federal income tax upon the amount of rent paid, the plaintiffs' refusal to pay same after being notified in writing as above stated, and asserting that 'the defendant herein and now declares said lease forfeited by reason of the aforesaid wrongful acts of the plaintiffs in failing to promptly pay said income tax, and asks the court to adjudge that the amount of income tax is due and payable from the plaintiffs under the terms of the lease aforesaid; that the plaintiffs have willfully refused to pay the same, and that the defendant has given proper and legal notice of such forfeiture for the required length of time; and that the court further decree that the plaintiffs herein are obligated to pay said income tax and that they have forfeited the said lease under the terms and provisions therein specified, . . . and prays judgment that the court find that plaintiffs herein have forfeited the said lease by reason of the failure and refusal to pay said income tax.'

"The chancellor, after hearing the case, rendered a decree that plaintiff is, and was at the commencement of the action, indebted to the defendant under and by virtue of the lease and on account of income tax charges by the Government against the rents accruing under said lease, in the sum of $840; that 'the controversy herein arose from a misinterpretation of the terms of the lease, reasonably applied, and not from any willful default in the payment of rents then due and payable; that a forfeiture should not be declared until a reasonable time for the payment of the above sum so found to be due has elapsed, after the final determination of this litigation.'

"It was thereupon adjudged that upon payment of the $840 with costs the temporary injunction be made permanent, but if default be made, then temporary injunction should stand dissolved and plaintiffs' petition dismissed. Thereafter on April 17, 1920, and at the same

305 Mo.—8.

term, the above decree was modified by the court adding thereto that 'it appearing to the court that plaintiffs have failed to comply with requirements of the decree entered herein, their motion for new trial is by the court overruled and their petition dismissed.' Thereupon plaintiffs appealed to this court.''

I.   At the outset one question should be eliminated. The trial court permitted oral testimony as to conversation between the parties while the lease was in the course of preparation.   This testimony, as might have
Oral
Testimony.   been expected, was contradictory.   It was no doubt admitted upon the theory that the tax clause of the lease was ambiguous.   The general rule is that all oral agreements prior to the written contract are presumed to have been merged in the written contract, and its terms become final, irrespective of previous oral talks or understandings.   [Bunce v. Beck, 43 Mo. l. c. 279, and cases cited.]

If the tax clause is not ambiguous, when taken by itself, or when taken and considered with all other portions of the lease, then there is no place for evidence *aliunde*.   [Koehring v. Muemminghoff, 61 Mo. 403; Bunce v. Beck, supra.]

In our judgment there is no ambiguity in the tax clause of this lease, and hence the lease must be construed by a consideration of the lease itself.   What either party might desire in the instrument, or thought was in the instrument, is utterly immaterial, when the language of the written instrument speaks in certain and unambiguous terms.   We think the covenant as to taxes thus speak in this lease, and we shall therefore not discuss the oral evidence as to what occurred prior to the signing of the lease.

II.   Let us turn an eye to the tax covenant in the lease.   ''The lessor covenants that he will pay all taxes,

general and special, and assessments, if any, *against the property and its improvements* which shall **Unambiguous Clauses.** be due and payable when the demised property shall be delivered to the lessee under this lease.'' There is nothing ambiguous about this clause. It simply means that there should be a clean slate as to charges *due* against the property and its improvements, at the date of the transfer.

Proceeding now as to the obligation of the lessee we find the lease says:

''And the lessee agrees to promptly pay all taxes, general and special, and assessments due and payable upon the execution and delivery of this lease, and all of the taxes thereof, general and special, including all income or government taxes, and all of the assessments and charges which shall be assessed, either in the name of the lessor or the lessee against the demised premises or its improvements, or the said rents during the term of this lease, or which shall become due and payable, during said term, as soon as same shall become due and payable.''

We see nothing ambiguous about this clause. The first portion of the clause confines the taxes to be paid by the lessee, whether they be general or special, income or government taxes, or assessments and charges, to such taxes and charges ''which shall be *assessed* either in the name of the owner or the lessee *against the demised premises or its improvements.*'' All these taxes whether government or otherwise must be taxes assessed ''*against the demised premises or improvements.*'' There is nothing dubious or doubtful about this clause. There is no liability as against the lessee unless there is an assessment of taxes or charges against the ''*demised premises or its improvements.*''

The next clause is, ''*or the said rents* during the term of this lease.'' Note this clause is connected with that just above quoted by the word ''or.'' A simple and plain reading of this clause in the connection in which it is used shows no ambiguity. Its clear meaning is ''all

income or government charges *which shall be assessed . . . . against . . . the said rents* during the term of this lease.'' The contract is plain, and we have the simple legal question as to whether or not an income tax assessed against the net income of the individual who chances to be the lessor, falls within the purview of this lease. That question we leave for a later paragraph. We have not in the above made use of any portion of the tax covenant in the lease following the word ''except'' as found therein. This for the reason that such portion gives no light upon the real issue in the case, which issue, as said, is one of law, when the language of the lease is given its plain every day meaning.

III. The contention of the appellant is that there has been no income tax or other government charges ''assessed . . . against . . . *the said rents.*''

**Assessment Against Rents.** Literally speaking this is true. The Government has made no assessment of any kind of a charge against ''the said rents'' as such. What the Government has done is that it has made an income tax assessment against the net income of the lessor. It is suggested that the clause ''either in the name of the lessor or lessee'' used in the paragraph as to taxes, supra, changes the situation, so as to cover an income tax assessed against the net income of the lessor. This contention fails when the connection of the clause, supra, is considered. The assessments, by the terms of the lease, are limited to assessments ''against the demised premises or its improvements, or *the said rents*'' which may be levied either in the name of the lessor or in the name of the lessee. But it must not be overlooked, that whether the tax or charges levied ''either in the name of the lessor, or the lessee'' they must be taxes and charges ''against the demised premises or its improvements, *or the said rents.*'' So that the very foundation is an assessment either against the demised premises, its improvements, ''or *the said rents.*'' We have no such an assessment in this case. We do not question

the proposition that, as a part of the rent reserved, the lessor could have required the lessee to pay all or any portion of said lessor's personal income tax upon his net income, whether all of such net income came from rent or not. Nor do we question that the lessor might have required, as a part of the rent reserved, the lessee to pay such portion of his personal income tax as the rent reserved bore to the total net income. Such things would be within the rights of the contracting parties. They could be plainly expressed in a lease, but in the lease before us it is not so written. In this contract the taxes or charges to be paid are such as may be *"assessed  .  .  . against  .  .  . said rents"* and not against the net income of the individual.

We think the statutory provisions existing at the time accounts for the wording of this lease. By the Federal Income Act of 1913, there were provisions for going to rents (sources of income) and impounding in the hands of the person paying the rent the income tax thereon. This lease was made early in 1916, and these provisions were no doubt in mind. [See 38 U. S. Statutes at Large, pp. 168-169 and 170.] Lessees are specifically named in this act of 1913. [See 38 U. S. Statutes at Large, p. 170.] Under this statute lessees were required to make a return of the rent for taxation, and to withhold from such rent the income tax. This was direct action in assessing the tax against the rent.

Under this Act of 1913 it has been ruled that it was the duty of the lessee "to deduct and withhold" from the rent the income tax thereon, and to pay the same to the proper Government official. [Suter v. Jordan Marsh Co., 225 Mass. l. c. 35.] The Act of 1913, so far as pertinent, reads:

"All persons, firms, copartnerships, companies, corporations, joint-stock companies or associations, and insurance companies, in whatever capacity acting, *including lessees or mortgagors of real or personal property,* trustees acting in any trust capacity, executors, adminis-

trators, agents, receivers, conservators, employers, and all officers and employees of the United States having the control, receipt, custody, disposal, or payment of interest, rent, salaries, wages, premiums, annuities, compensation, renumeration, emoluments, or other fixed or determinable annual gains, profits, and income of another person, exceeding $3000 for any taxable year.''

In September (8th day thereof), 1916, a new Income Tax law was passed. This was after the actual making of the lease involved, but before the lease was to become effective, which date was May 5, 1918. In this Act of 1916, the words ''lessee or mortgagors'' were dropped, and in this respect the law materially changed. For comparison we quote from 39 U. S. Statutes at Large, page 762, as follows:

''All persons, firms, companies, copartnerships, corporations, joint-stock companies, or associations, and insurance companies, except as hereinafter provided, in whatever capacity acting, having the control, receipt, disposal, or payment of fixed or determinable annual or periodical gains, profits, and income of another individual subject to tax, shall in behalf of such person deduct and withhold from the payment an amount equivalent to the normal tax upon the same and make and render a return, as aforesaid, but separate and distinct, of the portion of the income of each person from which the normal tax has been thus withheld, and containing also the name and address of such person or stating that the name and address or the address, as the case may be, are unknown.''

The significance is that under this law lessees were not required to make returns to the Government of rents paid, nor to withhold and deduct the income tax, as by the Act of 1913. What we have quoted, supra, shows the persons who must make returns for another, and who must withhold and deduct the income tax. On page 763, under the head of ''Assessment and Administration'' (Sec. 9, paragraph (b), 39 U. S. Stat.) we find the word lessees used, but there is in the paragraph the limitation

or qualification ''who are required to make and render
a return in behalf of another, as provided herein.'' Those
''as provided herein'' required to render a return for
another are named in the quoted portion last above and
among them we do not find lessees. So construing both
portions of the statute (Income Act of 1916, Sept. 8)
lessees drop out of the law. Under it only persons re-
quired to make returns for another, were required to
withhold and deduct the income tax. So in 1916, the Gov-
ernment's direct action against rents, as sources of in-
come, ceased. Rents, as such, were no longer directly
taxed by the Government.

By what is called the Income Tax Act of 1918, ''pay-
ment of tax at source'' dropped out of the law, except as
to ''non-resident aliens.'' [40 U. S. Statutes at Large,
p. 1072.]

So to my mind, the writer of the lease here involved
(who was the lessor) permitted the Income Act of 1913,
the law then in force, to influence the wording of his lease.
Under that act the lessee was required to withhold the
income tax, and to make return. The law struck at the
rent itself. The lease in this case does the same thing.
But it is immaterial what influenced the language, so
long as it is plain and unambiguous. The idea struck us
that the language was accounted for by the then existing
law, and we so think, immaterial as it is to the determina-
tion of this case. Further views of the legal status, we
take next.

IV. We might close this case with what has been
said, supra. In other words the lease requires the lessee
to pay such income tax *''which shall be assessed  .  .  .*
*against  .  .  .  the rents* during the term of this lease,''
and this record fails to show any assessment of a tax
against the rents, as such. The only thing pleaded by the
defendant is that he paid an income tax upon his net in-
come, and that a part of that net income was from rent.
He does not claim that the law impounded the income tax
in the hands of lessee, and that the lessee was by law re-

quired to pay the same to a proper Government officer. In other words, there is no income tax charged to this rent as was by the Income Tax Act of 1913.

The tax which defendant paid was a personal tax on his net income, and not a tax "assessed . . . against the rents." The whole law of the case has been so fully and recently reviewed by the St. Louis Court of Appeals, upon a lease covenant so much like the one at bar, that we feel very much constrained to leave the matter there. [Riesenberg v. Primary Realty Co., 258 S. W. 23.]

Speaking of an income tax (both State and Federal) that court says: "The tax in question is the personal tax of the lessor, arising out of her possession of a net income in excess of her exemptions." Many cases take this view. [Wire Co. v. Wollbrinck, 275 Mo. 339; Park Building Co. v. George P. Yost Fur. Co., 175 N. W. (Mich.) l. c. 435; Dennehy v. Barnheisel, 218 Ill. App. l. c. 93; State ex rel. v. Wis. Tax Comm., 161 Wis. l. c. 116; Urquhart v. The Marion Hotel Co., 128 Ark. l. c. 287; Pennslyvania Cement Co. v. Bradley Contracting Co., 274 Fed. 1003; United States v. Philadelphia, B. & W. R. Co., 262 Fed. l. c. 190; Matter of Hazard, 228 N. Y. l. c. 29; State ex rel. v. Wis. Tax Comm., 166 Wis. l. c. 290.]

In the Park Building Co. Case, supra, it is said: "Whether direct or indirect, the lessor's income tax as applied to this leased property is not a tax 'levied upon said premises,' or on any of the four estates named in the lease, but is in its process of levy and assessment a *direct personal tax against him, inseparable from him and his annual income, beginning and ending with him.*"

To like effect is Wisconsin Tax Commission Case, 161 Wis. l. c. 116, supra, whereat it is said: "Our income tax is a burden laid upon the recipient of the income whether derived from real estate, personal property, or labor, the amount of which is determined by the amount of the total net income derived from these sources, singly or combined."

From it all we rule that the plaintiff, under the terms of the lease before us, is not liable for income taxes paid by defendant upon his personal net income, although a portion of that net income may have arisen from rents called for in the lease. Not that defendant could not have contracted to have his personal tax paid, as a part of the rent reserved, but that he did not so contract.

The judgment is reversed and the cause remanded with directions to the circuit court to set aside its present judgment, and enter judgment for plaintiffs, as prayed for in their bill of equity. All concur.