[Civ. No. 7973. First Appellate District, Division One. — April 1, 1932.]

TERMINAL INVESTMENT COMPANY (a Corporation), Appellant, v. POPE ESTATE COMPANY (a Corporation), Respondent.

Andrew F. Burke for Appellant.

Pillsbury, Madison & Sutro, Alfred Sutro and Eugene M. Prince for Respondent.

THE COURT.—This appeal was taken from a judgment entered upon the sustaining of a demurrer to an amended and supplemental complaint, without leave to amend. The action was brought to recover $7,317.04 paid under protest by appellant to respondent as reimbursement for income taxes paid on rental it had received from appellant for the years 1920 to 1923, inclusive. Incidentally, it was for a decree declaratory of the rights and duties of the parties under the tax covenant of the lease, but this feature has been dropped from the case.

In 1909 the respondent, owner of a parcel of real property on Sacramento Street, near Drumm, in San Francisco, made a fifty-year lease of the property to the appellant at a monthly rental ranging from $1596 at the beginning of the term, to $3,100 at the end. In the lease the lessee agreed to pay all taxes levied against the lot and improvements, or against the owners by reason of their ownership, whether assessed to the property itself *"or upon or against the income from said land or its improvements"*. (Italics ours.) The respondent paid the federal tax on its net income from the leased premises for the year 1920 in the sum of $1508.03; for 1921, $1471.08; for 1922, $2,247.82 and for

1923, $2,090.11. Respondent has sources of income other than the property in question and its tax therefor was computed each year upon its total gross income from all sources, including the rent from these premises, which during each of these four years was $24,600. The gross income from all sources varied and fluctuated from year to year according to gains and losses, and it was of course subject to certain authorized exemptions and deductions. Taking the year 1922 as typical, the $2,247.82 paid was such proportion of the total income tax as represented the $24,600 rent derived in that year from the leased premises. After the payments had been made, respondent called upon appellant for reimbursement and threatened to exercise its option to terminate the lease in case of a refusal. Under protest the appellant paid, and then made a demand for repayment, followed by this action. These facts are pleaded in the complaint by appropriate allegations in four counts, which differ only in the amounts paid for each of the four years. In sustaining the demurrer, the learned trial court held that the language of the tax covenant obligated the lessee to repay that part of the income tax attributable to the rentals paid by appellant.

The appellant challenges the correctness of this holding upon the ground that the tax provision binds the lessee to pay such taxes only as may be levied upon the "rent" *as such;* that is to say, upon the rent *as a specific item of taxation,* and that the federal law does not tax rents, as such; it does not tax any of the specific items which go to make up the income of the taxpayer. Stated another way: That the $2,247.82 (for example) paid for 1922 was not a tax "against the income from said land or its improvements", but was *part* of a tax on respondent's net income for that year, which net income was computed upon gross income derived from various sources less exemptions and deductions allowed by law.

Regardless of the differing conclusions reached by the authorities upon this question (and it will be seen presently that the cases fall into two rather distinct groups), the cases are fairly in accord in holding that "The determination of any such question depends upon the words of the contract, the context in which they occur, and the subject-matter to which they are applied." (Chief Justice Rugg in *Stony Brook R. R.* v. *Boston & Maine R. R.,* 260 Mass. 379 [53

A. L. R. 700, 157 N. E. 607], wherein will be found a rather full review of the cases. See, also, to the same effect, *North Penna R. R. Co.* v. *Philadelphia & R. Ry. Co.*, 249 Pa. St. 326 [95 Atl. 100].) Moreover, there is like unanimity on the legal proposition "that taxation upon real estate means one thing, and taxation upon income means another" (Crosby, J., in *Codman* v. *American Piano Co.*, 229 Mass. 285 [118 N. E. 344, 346]), or as Chief Justice Rugg puts it in the Stony Brook case, "An assessment upon income is an assessment upon a subject different from a tax upon property." In *Brainard* v. *New York C. R. R. Co.*, 242 N. Y. 125 [45 A. L. R. 751, 151 N. E. 152, 153], Justice Pound says in the same connection: "In actions . . . where the lessee agrees to pay all taxes levied and assessed on or in respect to the property, the distinction between taxes on the income of property and taxes on the property itself has been repeatedly pointed out. With monotonous frequency the courts have held in this connection that a tax on the rents or income of real property is not considered a tax on the property itself."

The pertinent and material provisions of the tax covenant are as follows: "As a part of the consideration for this lease, *the lessee covenants and agrees to further pay* or discharge *all taxes,* assessments, penalties, charges or rates or liens of any nature whatsoever which may, for the period following January 1, 1910, be levied, *assessed,* charged or imposed or claimed on or against said lot of land or any improvements or fixtures thereon or appurtenances thereto, or any part thereof, or *against the owner* or owners of said land or the improvements, . . . *by reason of said ownership,* by whatsoever authority levied, assessed, charged or imposed or claimed, and whether the same be upon or against the property herein leased, its improvements, fixtures or appurtenances, or any part thereof, or *upon or against the income from said land or its improvements,* . . . it being the intention of the parties to this lease that the rents herein reserved . . . shall constitute a net income to the lessor from said land herein leased, equal in amount to said rents." (Italics ours.)

In this inquiry we are concerned only with an assessment against the owner, by reason of his ownership, when it is "upon or against the income from said land or its improve-

ments''. The federal tax in question was levied against the owner by reason of its ownership. The tax, as we see it, was against the income from the leased premises despite the fact that there was, admittedly, no distinct, separate, specific levy against the rent as such and, indeed, no provision of law for such specific levy. The tax was against the net income of the respondent after various deductions and exemptions allowed by law had been made, but one of the items of gross income from which the net income was computed (and a very substantial item at that) was the $24,600 rental paid by the appellant. This rental was a constituent part of respondent's total annual income and the $2,247.82 was such proportion of the whole tax paid as represented this rental. We are unable to agree with appellant in its contention that merely because the income, $24,600, was not taxed *as $24,600,* or separately, or at the source, or ''as rent'', *the respondent has not paid a tax on income from the land.* The problem, it is true, would be simplified if the respondent had no income other than this rental. The appellant concedes that then ''there would be no difficulty in determining the amount of the liability''. But the practical difficulty in arriving at the amount, or the intricacy of the accounting or arithmetical problem presented, should not frustrate the intention of the parties if such intention is clear, as we think it is. ''That is certain which can be made certain.'' (Civ. Code, sec. 3538.)

The draftsmen of the lease, in choosing its language, seem to have been careful to carry into the tax covenant the distinction stated in the Codman case, namely, ''that taxation upon real estate means one thing, and taxation upon income means another'' for by apt and comprehensive language they imposed upon the lessee the tax burden in both forms. We see no escape from giving to the covenant the meaning given to it by the learned trial court, and we can find no basis for the claim that in order to carry into legal effect this promise to pay a tax upon the *income* from the leased premises, a tax upon the *rental,* as such, i. e., *as a specific item of taxation,* must exist. To adopt this view would be to read into the covenant something which the parties did not put there.

Again, ''The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable,

each clause helping to interpret the other." (Civ. Code, sec. 1641.) If any doubt remains that the draftsmen of the lease intended to hold the lessee for taxes paid by the lessor under both forms of taxation, such doubt would seem to be dispelled by the following language with which they fortified that which had gone before, namely, "it being the intention of the parties to this lease that the rents herein reserved . . . shall constitute a net income to the lessor from said land herein leased, equal in amount to said rents".

In *Republic Building* v. *Gaertner*, 201 Ky. 509 [30 A. L. R. 982, 256 S. W. 1111] (a case practically parallel to the case at bar), Chief Justice Sampson said with respect to a similar undiminished-rent provision: "This latter clause no doubt was intended to make absolutely certain that which was reasonably certain from other words in the same paragraph of the contract; that is, that the lessee was to pay all taxes on the property . . . and all taxes or assessments on income giving the lessor the sums named as net rentals." For each of the four years in question the rental was $24,-600. If the landlord who received it paid a tax upon it as income, it is obvious that his *net* income from the property would be what was left after the tax was paid, or the difference between $24,600 and the amount of the tax. For instance, in the year 1922, the tax was $2,247.82. His net income, then, would be $22,352.18. However, the covenant says that his *net income* shall be the rent reserved, namely, $24,600, and unless the holding of the trial court stands, the net income ceases to be the rent reserved which the parties agreed should remain in all its wholeness and integrity, but it turns out to be such rent *diminished by the tax*.

In all the cases cited by appellant, the courts held the covenants not sufficiently broad to include the obligation to repay federal income tax paid on the rent reserved. A typical case is *Park Bldg. Co.* v. *Yost Fur Co.*, 208 Mich. 349 [175 N. W. 431] (wherein most of the authorities are reviewed), where the lessee had agreed to pay all taxes upon the premises and buildings and any personal tax levied upon the lessor " 'upon the leasehold estate hereby created and upon the reversionary estate . . . ; the intent hereof being to insure . . . a net rental hereunder, not chargeable with any burdens by way of taxes, or otherwise, resulting in the diminution of the same' ". The court said: "The tax section

in detail and with apt phraseology takes cognizance of and requires that the lessee shall pay all taxes upon four estates in the property, directly named as follows: 'said premises'— 'all buildings and improvements thereon'—'the leasehold estate hereby created'—and 'the reversionary estate in said premises during the term hereby granted', and the lessor with detailed effort to make certain from the beginning prompt payment by the lessee of the taxes so specified'', provided for certain other tax payments, but ''with no suggestion indicating an intent that the tenant should pay any portion of the personal income tax . . . , *a matter of greater moment and easier description than certain of the requirements clearly and distinctly specified''.* (Italics ours.) The implication is clear, that had income tax been mentioned the case would have gone the other way.

The appellant also cites *Des Moines Union Ry. Co.* v. *Chicago Great Western Ry. Co.,* 188 Iowa, 1019 [9 A. L. R. 1557, 177 N. W. 90], *Catawissa R. R. Co.* v. *Philadelphia & R. Ry. Co.,* 255 Pa. St. 269 [99 Atl. 807], *Sharon Ry. Co.* v. *Erie R. Co.,* 268 Pa. St. 396 [112 Atl. 242], and *Codman* v. *American Piano Co., supra,* which hold that where a lessee covenants to pay all taxes levied or assessed upon the leased premises, or upon the interest of the lessor therein, or upon the receipts from business conducted therein, the lessee is not liable for any part of the income taxes of the lessor. Appellant makes no claim that these cases go any further than this, and it is needless, therefore, to discuss them in detail, the Park Building Company case being typical.

In *Young* v. *Illinois Athletic Club,* 310 Ill. 75 [30 A. L. R. 985, 141 N. E. 369] cited by appellant, the ninety-nine year lease contained a covenant binding the lessee to pay all taxes of every nature and kind whatsoever assessed upon the real estate demised, or upon the improvements, or upon any interest of the lessor under the lease, or which the lessor should be required to pay by reason of his interest in the property and improvements. The opinion reviews most of the cases and holds that ''It has been the universal holding of courts considering the question, so far as we are able to find, that *unless the lease expressly provides for the payment of taxes on the income or rentals received under the lease the imposition of such burden on the lessee is not justified.''* We have given emphasis to the concluding words because this case,

like the Park Building Company case, *supra*, recognizes that if income is mentioned in the covenant as a subject of taxation—as it is in the case at bar—a wholly different question is presented.

In none of the six cases just cited is the word "income" to be found in the tax covenant. They all hold, as might be expected, that a party is not to be bound beyond the language of his covenant and that the inclusion of one or more subjects of taxation excludes all others. They all recognize "that taxation upon real estate means one thing, and taxation upon income means another". If the covenant in the instant case had stopped short in its enumeration of taxable subjects, and had not mentioned income, these cases might have a bearing. As it is they have none. No cases except perhaps those from Missouri are cited by the appellant holding that in order to bind a lessee to pay taxes on "income" there must be found a provision for the taxation of rental as such, or against income from rental at the source (as in *Suter* v. *Jordan Marsh Co.*, 225 Mass. 34 [113 N. E. 580]), in order to give legal effect to a plain promise to pay the tax on income.

While "income" is not the subject of taxation in any of the cases thus far cited or discussed (save the instant case), the appellant does cite several Missouri cases where "income" was one of such subjects. We discuss these Missouri cases later on.

To the cases cited by appellant might well be added that of *Stony Brook R. R.* v. *Boston & Maine R. R.*, *supra*, where the covenant bound the lessee to pay " 'all public taxes, assessments and charges whatsoever on the property, franchise or capital stock' " of the lessor " 'that shall be placed or assessed upon said first party or upon its stockholders residing in Massachusetts' ". The decision points out that the enumeration quoted "excludes 'income' from the subjects on which the lessee agrees to pay the governmental imposts. . . . The omission of income in this connection imports that it was not intended to require the lessee to pay taxes assessed on income. . . . The natural as well as the legal significance of income in connection with taxation is something different from property."

Our view, which is thoroughly in accord with that of the learned trial court, is amply supported by the authorities.

Perhaps the closest case on the facts is *Republic Building* v. *Gaertner, supra,* where the lessee agreed " 'to pay all taxes, assessments, water rents or other assessments imposed, assessed, or levied upon said premises or upon any part thereof, or any buildings or improvements thereon, or the income from said premises, . . . ' ".

The contention of appellant herein is substantially the same as that made in that case, which was that " 'The phrase in the lease "income from said premises" does not mean the "rent" payable to the lessor thereunder, because the word "rent" would otherwise have been used therein, if such had been the intention of the parties.' " The decision frankly recognizes and states the rule followed in appellant's cases first cited herein as follows: "The general rule is that unless the covenants of the lease expressly provide that lessee shall pay the income tax that may be required of the lessor on the rentals received by him from the lessee, the lease will not be enlarged by reading therein an obligation on the part of the lessee to pay any part of the lessor's income tax—the principle *'expressio unius est exclusio alterius',* applying where the lease specifically designates the taxes which the lessee is to pay." (Citing the Catawissa, Codman and Des Moines cases, *supra.*) The lessee there was held for the tax paid, the court saying: "In fact the contract required the lessee to pay every kind of tax or assessments 'whatsoever'. There was a tax on the income-rentals from the grounds. The rentals due by the lessee to the lessor were subject to an income tax. This was just as certain, definite and regular as the *ad valorem* tax on the property each year. The mere fact that it went to the federal government in place of the state government made no difference. It was a tax within the meaning and intent of the contracting parties who executed the lease, and we think the trial court did not err in so holding and requiring the lessee . . . to pay not only the *ad valorem* tax and such other tax of that nature as may become due from the said property but the income tax in controversy here as well, which may be found to be due on 'the income from said premises'."

In *North Penna R. R. Co.* v. *Philadelphia & R. Ry. Co., supra,* the lessee agreed to assume the payment of all taxes and assessments upon the "yearly payments herein agreed to be made by the party of the second

part to the party of the first part . . . for the payment or collection of which . . . the said party of the first part would otherwise be liable or accountable under any lawful authority whatever." "This clause," said the court, "is certainly quite broad enough to cover the income tax, payable out of and assessed upon the 'yearly payments agreed to be made'." In that case it was contended, as it is in this, "that the income tax is a tax upon net income and not a tax upon the rents or profits derived from real estate", with respect to which contention the court said: "The real question to be considered is the meaning of the parties in view of the language used by them, there being no doubt if defendant agreed in appropriate terms to pay the income tax or any other tax to which the plaintiff might be subjected, such agreement would be binding, regardless of whether the income tax be technically viewed as a tax on rent or on the net income from rent." There was no expression of intent respecting undiminished rent such as is found in the covenant herein, but the court held that the language used was its equivalent in the following language: "It was the apparent intention of the parties, that plaintiff receive the amounts stipulated without deduction by reason of any tax, charge or assessment of any kind."

Other cases from the same state to the same effect are *Philadelphia C. P. Ry. Co.* v. *Philadelphia R. T. Co.*, 263 Pa. St. 561 [107 Atl. 329], and *Philadelphia G. & N. R. R. Co.* v. *Philadelphia & R. Ry. Co.*, 265 Pa. St. 325 [108 Atl. 528]. *Suter* v. *Jordan Marsh Co., supra,* held income tax withheld at the source (under the law as it then read) to be chargeable against the lessee under a covenant by which he agreed to pay " 'all taxes and assessments whatsoever, . . . which may be levied for or in respect of the said leased premises, . . . or upon or in respect of the rent payable hereunder by the lessee, howsoever and to whomsoever assessed' ". This covenant, it will be noted, is not nearly so comprehensive as the one under examination.

In the same state in *Kimball* v. *Cotting,* 229 Mass. 541 [L. R. A. 1918C, 1189, 118 N. E. 866], the same rule was followed, the court saying: "Although the case at bar is not governed by *Suter* v. *Jordan Marsh Co.*, 225 Mass. 34, it falls within the same class, and is distinguishable from *Codman* v. *American Piano Co.*" The covenant bound the

lessee to pay any taxes assessed " 'to either the lessors or the lessees upon or against the rent payable hereunder . . . , whether levied or assessed upon the same as rental or income . . . ' . . . It is manifest," says Chief Justice Rugg, " . . . that it was the purpose of the parties to impose the obligation upon the lessee whether the tax was levied as a property or as an income tax."

In *Kimball* v. *Cotting,* 234 Mass. 172 [125 N. E. 551], the covenant in the Codman case, *supra,* is quoted and the two cases distinguished. In the Kimball case the covenant bound the lessee to pay any taxes " 'upon or against the rent payable hereunder whether levied or assessed upon the same as rental or as income of any person or persons entitled thereto' ". The defendants conceded that they were liable for the normal federal income tax, but resisted payment of the surtax for which plaintiff also sought reimbursement. They were, however, held liable for the surtax upon the authority of the Kimball case just cited. (229 Mass. 541 [L. R. A. 1918C, 1189, 118 N. E. 866].)

In *Farmers' Loan & Trust Co.* v. *Park & Tilford,* 127 Misc. Rep. 59, 215 N. Y. Supp. 244, the covenant bound the tenant to pay all taxes which " 'may become payable by any owner of the demised premises upon said rents as income of such owner' ". It is interesting to note that the defendant contended, just as this appellant does, "that the lease contemplates merely the payment of a tax on rents as such, and that, inasmuch as the federal . . . income tax laws impose no such tax on rents, nothing is herein recoverable". It was held, however, that the words of the covenant "unequivocally require the payment of income tax imposed upon the landlord on the amount received under this lease".

In none of appellant's cases thus far discussed do the covenants refer to income or taxes on income. The Massachusetts, Pennsylvania, Kentucky and New York cases just reviewed are all cases where either rental or income, or both, were mentioned in the lease, and those terms were treated more or less interchangeably so long as the tax was against the rental or the income, and not against the property. Several cases, however, are relied upon by appellant wherein the covenants deal with income. The first of these is *Dennehy* v. *Barnheisel,* 218 Ill. App. 91, where the lessee agreed to pay " 'all taxes, assessments, income tax (should

there ever be any levied) . . . levied, charged or imposed *upon said premises, or any part thereof,* . . . ' '' The plaintiffs sued for reimbursement of an income tax paid by plaintiffs *''on the rents derived from the premises''* and it was held that they could not recover. (Italics ours.) The court points out that when the lease was made the Income Tax Law was in effect, and adds, ''If it were the intention to require the tenant to pay all income taxes which plaintiffs were compelled to pay by reason of the rent derived from this property, it would have been a simple matter to have stated so in plain language. The income tax which plaintiffs are seeking to recover is not 'levied, charged or imposed upon said premises'. It is a personal liability against the person receiving the income.'' The court then cites the Codman and Suter cases, *supra,* following the former and distinguishing the latter. The case turns simply upon the words: ''income tax . . . upon said *premises,* or any part thereof''. The court remarks that ''The provisions of no two leases are the same, and each case must be decided upon the particular wording of the lease under consideration'', and concludes: ''If in the future, however, the Congress should enact legislation which would impose any income tax upon the property in question, then the provision in the lease would become effective.''

Another is *Elliott* v. *Winn,* 305 Mo. 105 [264 S. W. 391, 394], where the lessee covenanted to pay all taxes '' 'including all income or governmental taxes, and all of the assessments and charges which shall be assessed, either in the name of the lessor, or the lessee against the demised premises or its improvements, or the said rents' ''. The court said that the ''record fails to show any assessment of a tax against the rents, as such. The only thing pleaded by the defendant is that he paid an income tax upon his net income, and that a part of that net income was from rent. . . . In other words, there is no income tax charged to this rent as was [done] by the Income Tax Act of 1913. The tax which defendant paid was a personal tax on his net income, and not a tax 'assessed . . . against the rents'.'' The case follows *Riesenberg* v. *Primary Realty Co.,* 214 Mo. App. 43 [258 S. W. 23], where the covenant was quite similar and the holding, likewise, in favor of the lessee. In the Riesen-

berg case the lessee promised to pay " 'such income tax as would be payable on account of the rent . . . reserved' ".

In the Farmers' Loan & Trust Co. case, *supra,* the court has this to say respecting the three cases last cited: "the language of the lease related solely to a tax on rental as such". *Laclede Gas Light Co.* v. *St. Louis Union Trust Co.,* 321 Mo. 782 [12 S. W. (2d) 432], and *Missouri Athletic Assn.* v. *Delk Inv. Corp.,* 323 Mo. 765 [20 S. W. (2d) 51], both follow the Riesenberg and Elliott cases. In the Laclede case it was held that the federal income tax is a personal tax on the individual's net income from all sources, not a "tax imposed . . . 'upon the income, rents and profits' arising from the demised premises" within lessee's covenant to pay all such taxes. The court says: "It is not a tax levied on income at its source. Lessors' income tax does not therefore fall within the terms of the covenant; it is not a tax imposed in whole, or even in part, 'upon the income, rents and profits' arising from the demised premises."

It is difficult, if not impossible, to reconcile these four Missouri cases with the Kentucky, Massachusetts, Pennsylvania and New York cases cited, and as they do not convince us that our construction of the covenant is wrong, and as they are against the prevailing weight of authority, we are not inclined to follow them.

■ The fact that the lease was entered into four years before the Income Tax Law of 1913 was enacted and five months before the law imposing a tax upon corporations was adopted is stressed by the appellant in support of the argument that the form of taxation of income in effect in 1920–1923 had not been adopted in 1909, but that the taxation of rents, as such, was then a well-known form of taxation; that such form of taxation had been discussed in the Pollock case (157 U. S. 429 [39 L. Ed. 759, 15 Sup. Ct. Rep. 673]; Id., 158 U. S. 601 [39 L. Ed. 1108, 15 Sup. Ct. Rep. 912]), and that Congress might impose such a tax was a possibility which the parties "undoubtedly had in mind". However, in the cases dealing with this phase of the subject, little weight has been given to this point. Strangely enough, in several of the cases cited herein, holding the lessee liable for income tax paid by the lessor on rental, the leases were drawn many years before any income tax law was enacted. Thus in *North Penna. R. R. Co.* v. *Philadelphia & R. Ry. Co., supra,*

the lessee road was held, under the terms of a lease made in 1879, for an income tax levied over thirty-four years later under the act of 1913. It was there said: "At the time the lease was made, there was no such thing as a federal income tax, but the words 'taxes and assessments' are sufficiently broad to cover such tax." In *Philadelphia C. P. Ry. Co.* v. *Philadelphia R. T. Co., supra,* the lessee road was likewise held under the act of 1916, upon a lease executed before the law in question was in existence. In *Suter* v. *Jordan Marsh Co., supra,* and *Kimball* v. *Cotting,* 234 Mass. 172 [125 N. E. 551], the point was raised as to a change in the law as to taxation during the term of the lease, but it was held to be "of no consequence". In *Kimball* v. *Cotting,* 229 Mass. 541 [L. R. A. 1918C, 1189, 118 N. E. 866], the lessee was held for income taxes paid under the act of 1913 under the terms of a tax covenant found in a ninety-nine year lease drawn in 1902.

The cases all turn, as this case too must turn, upon the language of the covenant. Granting, as counsel suggests, that the parties in 1909 had in mind when they framed the tax covenant the taxation of rents, as such, rather than the form of taxation which eventuated, the lessee's obligation is nevertheless measured only by the language the parties chose. In the case of *Welch* v. *Phillips,* 224 Mass. 267 [112 N. E. 651, 652] (cited in the Suter case, *supra,* and in *Kimball* v. *Cotting,* 234 Mass. 172 [125 N. E. 551], on the point now under discussion), it is said: "Presumably the change in the tax law which makes them liable for the 1913 tax was not contemplated by them. But the payment of that tax comes precisely within the terms of the contract they made, and we can only construe and enforce it. *It is not for us to speculate as to what agreement they would have made if they had foreseen the likelihood of a change in the tax law, and to modify the lease in accordance therewith.*" (Italics ours.)

The difficulty of ascertaining the extent of the lessee's tax obligation under this covenant—because the present law taxes net income only—leads appellant to urge: (a) That the parties never intended to obligate the lessee to pay any part of the income taxes of the lessor, or, (b) that if they did so intend, the lease is so indefinite and uncertain in that respect as to be incapable of enforcement. This subject has

been already touched upon. Indeed, the difficulty is not new for in the North Pennsylvania case, *supra,* it appears that the plaintiff demanded that the defendant repay the amount paid as income tax "less such amount as represented the tax on income received from other sources". The opinion concludes as follows: "The only question remaining would be the practical one of separating the net revenue derived from these rents from that derived by plaintiff from other sources; but, as this question has been settled by agreement of the parties themselves, it need not be considered here." In the Suter case, *supra,* the same difficulty was dismissed in the following language: "There are also deductions by way of expenses and otherwise. But these considerations do not overbear the direct and explicit words of the act which seem to us to bring the imposition here in controversy within the kind of tax and assessment which is described in the lease." Again, it must be remembered that in the Kimball case, *supra,* the lessee was held for the surtax as well as for .the normal tax and in the Philadelphia C. P. Ry. Co. case, *supra,* the lessee was held for war excess profits tax as well as for income tax.

The difficulty under discussion was considered by the learned trial judge and it is difficult to improve upon what he said respecting it: "It is conceivable that a practical problem may sometimes arise in the determination of the precise fraction of the total tax on the aggregate net income of the lessor which should properly be allocated to the rentals received. But problems of that sort must be met as they lift their heads, just as the problem of apportionment between the parties in the Bryant Park Building case, 133 Misc. Rep. 225 [231 N. Y. Supp. 451] was met; and there is scarcely a suit for an accounting in which there is not some practical question to be solved. So there is no good reason for shying at the shadow of a possible puzzle. No contention is made by plaintiff that if it was chargeable at all for the taxes of the years in question, its liability was for any lesser amounts than those demanded and paid under protest."

For the reasons herein given, and upon the authorities cited, we are satisfied that the judgment appealed from was correct and should be affirmed. It is so ordered.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 30, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 31, 1932.