TENNECO WEST, INC., a Delaware corporation, Plaintiff,

v.

MARATHON OIL COMPANY, an Ohio corporation, Defendant.

No. CV 82–1492 RG(Px)

United States District Court, C.D. California.

June 10, 1983.

Keith K. Hilbig, Smith & Hilbig, Torrance, Cal., for plaintiff.

Bela G. Lugosi, Hanna & Morton, Los Angeles, Cal., J. Craig Jenkins, Clifford, Jenkins & Brown, Bakersfield, Cal., Morris Gray, Div. Atty., Marathon Oil Co., Casper, Wyo., for defendant.

### ORDER

### (SUMMARY JUDGMENT)

GADBOIS, District Judge.

### STATEMENT OF FACTS

Plaintiff Tenneco West, Inc. ("Tenneco") commenced this action in 1982 by a complaint for declaratory relief against Marathon Oil Company ("Marathon"). The parties' cross-motions for summary judgment prompt this decision. The essential facts are undisputed. Accordingly, the case is an appropriate one for disposition by summary judgment.

Between 1933 and 1938, Tenneco, as lessor, and Marathon, as lessee, entered into oil and gas leases involving four tracts in Kern County, California. These leases were designated I–MA–27, II–MA–30, II–MA–48, II–MA–106. Under the latter three leases the lessor is entitled to percentage royalties on the crude oil produced from the leased premises in the amounts of 22.5%, 23% and 23.5%, respectively, or a royalty of 50% of the net profit, whichever is greater. Lease I–MA–27 entitles the lessor only to a percentage royalty of 22.5% and contains no alternative net profit provision. Leases I–MA–27, II–MA–30 and II–MA–106 provide that the lessor's royalty is payable either in kind (i.e., in crude oil), or in money. The royalty on lease II–MA–48 is payable in money only.

Each of the four subject leases contains language substantially identical to the following net royalty clause:

All royalty payments made to the Lessor hereunder shall be computed and made without any deduction or charge on account of any cost or expense of exploration, development, production, extraction, treatment, compression, recycling, transportation, lifting, collecting, gathering, sale, delivering, cleaning, or dehydration, or any other deduction or charge whatsoever whether of same or different character and whether or not incidental or relating to the unit operation . . . .

Leases II–MA–30, II–MA–48, and II–MA–106 contain language substantially identical to the following "tax shift" clause:

TAXES, ASSESSMENT, ETC. ON ACCOUNT OF OPERATIONS, ETC. The Lessee shall, at its own expense, and without reimbursement by the Lessor, pay and discharge any and all taxes, charges or assessments upon or referable to any operations or acts of the Lessee or on its behalf upon the demised premises, including (but not by such inclusion limiting the generality of the foregoing) the

drilling or operation of any well or wells, the production, extraction, severance or removal of any oil or other products, the processing, refining, storage or use thereof, the sale of any such oil or other products or of any products manufactured therefrom or therewith, or the transportation thereof away from the demised premises; and the Lessee shall also at its own expense, and without reimbursement by the Lessor, pay and discharge any and all assessments, charges or obligations of any kind whatsoever which, by reason of any operations of the Lessee, may be or might become a lien upon or charge against the demised premises, or any part thereof, or any well situate thereon (including, but by such inclusion in nowise limiting the scope of the foregoing provisions, any charge, assessment, claim or obligation created by or arising under Chapter 718 of the Statutes of 1915 of the State of California, or any act amendatory thereof or supplemental or additional thereto) whether the same shall be created or shall arise under or by reason of any present or future law, ordinance, regulation or order whatsoever.

At the time the leases were executed, and until March 1980, there were no Federal or California taxes on the production, extraction, severance, or removal of hydrocarbons. However, in March of 1980 the provisions of the Federal Crude Oil and Windfall Profit Tax Act, 26 U.S.C. §§ 4986–98, became effective. Since the operative date of the Act, Marathon has withheld from its royalty payments due Tenneco an amount equal to the WPT attributable to Tenneco's royalty interest in the subject leases. Marathon has transmitted these amounts to the Treasury for Tenneco's account.

The parties agree that Tenneco is a "producer" within the meaning of the Act and, hence, in the absence of a valid agreement in the subject leases shifting incidence of the tax, it would be obligated to pay its ratable share of WPT attributable to the production from the leased acreage.

## ISSUE

The issue in this case is whether, as between the parties only, defendant must bear the entire WPT resulting from production from the leased properties or whether it must be apportioned between the parties as provided in the WPT Act. In urging the former proposition, plaintiff contends that the parties have, by agreement, effectively shifted incidence of the tax to defendant. Plaintiff relies for this purpose on the net royalty clause of each lease and on the "tax on operations" clause of the three leases which contain it.

## ALLOCATION OF TAXES

It is axiomatic that parties to a contract may agree as to which of them will bear the burden of taxes imposed by reason of actions contemplated by the contract. *Safe Harbor Water Power Corp. v. United States,* 303 F.2d 928, 157 Ct.Cl. 912 (Ct.Cl. 1962). This principle is fully applicable to oil and gas leases. 47 Cal.Jur.3d § 47.

It is likewise clear that a contractual tax allocation clause will be effective as to taxes enacted after formation of the agreement if the language of that provision can be construed as applying to the particular tax in issue. *J.W. Perry Company v. City of Norfolk,* 220 U.S. 472, 31 S.Ct. 465, 55 L.Ed. 548 (1911); *Terminal Inv. Co. v. Pope Estate Co.,* 122 Cal.App. 281, 10 P.2d 139 (1932).

A careful review of the WPT Act itself and the available legislative history behind the statute fails to disclose evidence of Congressional intent that the above rules should not govern incidence of the WPT in appropriate cases.

## ROYALTY CLAUSE

Tenneco contends that the net royalty clause of each lease compels Marathon to bear the entire WPT. That position is untenable. Certainly this clause creates a royalty interest which is free of production expenses and deductions, but it cannot be construed as embracing an excise tax imposed by its terms directly on the royalty

owner. Although the working interest operator withholds and transmits the WPT attributable to the royalty interest this is not a "deduction" or "expense" in any sense intended by the parties executing the lease. The net royalty language simply cannot reasonably be interpreted to shift incidence of the WPT to the defendant. It is significant that each lease has extensive and specific treatment of some taxes, but the word "tax" is not used at all in the royalty provisions.

## TAX CLAUSE

■ The heart of this case is the question of whether the above-quoted tax on operations provision contained in three of the subject leases operates to shift all WPT to Marathon. Resolution of this question requires close analysis of the Act in order to determine its precise nature.

The Conference Committee Report, which attended enactment of the WPT, described the tax as "a temporary excise or severance tax." 838 CCH Stan.Fed.Tax Rep. ¶ 4972.-15. The Act itself describes the tax:

An excise tax is hereby imposed on the windfall profit from taxable crude oil removed from the premises during each taxable period.

26 U.S.C. § 4986(a).

The key to operation of the tax is removal, in that calculation of the tax starts with a "removal price," which is the price for which each barrel of oil is sold or deemed sold. The tax structure created by the Act is very complex, but essentially the tax is equal to each barrel's removal price, less its adjusted base price and any state severance tax adjustment, multiplied by the applicable oil tier rate.

The Act imposes the WPT upon the sale and removal of oil from the producing premises, recognizing that sales of crude are normally made at the wellhead. If oil is removed from the producing premises prior to sale, the statute provides for a

constructive sale upon such removal. The same treatment is accorded to refining upon the premises as of the day that process commences. 26 U.S.C. § 4988(c)(3)–(4). The exceptions to this constructive sale and removal rule are few and narrowly drawn, and they generally involve use of the oil in tertiary recovery or in a fraccing process on the premises. Reg. § 51.4996–1(d).

Marathon's principal argument on this issue is that the tax is not upon actions or operations on the property but rather upon an economic interest in oil. This position, which is imaginative and most ably presented, is nonetheless at clear odds with the plain language of the tax on operations clause and provisions of the WPT Act. As may be seen, the WPT levy is a *severance* tax[1] on *production,* imposed at the wellhead as each barrel is *removed* and *sold,* actually or constructively. As such, the tax matches perfectly the description in the subject leases of taxes intended by the parties to be shifted. The tax clause specifically applies to taxes referable to any "operations . . . upon the demised premises," to "production," to "severance," to "removal" and to "sale." The conclusion is inescapable that the effect of the tax clause is to shift the incidence of WPT entirely to the operator.

## DECISION

Lease I–MA–27 contains the net royalty clause but not the tax on operations language. The only tax provisions of that lease refer to property taxes and are clearly inapplicable to the WPT. Accordingly, the court will declare that, with respect to production from that lease, Tenneco must bear its ratable portion of WPT. With respect to the other subject leases the tax clause effectively shifts the entire WPT to Marathon.[2]

---

1. The Act's credit for state severance taxes buttresses this characterization.

2. The court is aware of the contrary decision by the California Court of Appeal in *Crocker National Bank v. McFarland Energy, Inc.,* 140 Cal.App.3d 6, 189 Cal.Rptr. 302 (1983).